FEDERAL HOME LOAN MORTGAGE ASSOCIATION v KELLEY
(ON RECONSIDERATION)

Docket No. 315082. Submitted June 11, 2014, at Lansing. Decided
August 26, 2014, at 9:00 a.m.

The Federal Home Loan Mortgage Association (Freddie Mac)
brought an action in the 55th district court to evict defendants
Michael R. Kelley and Kathryn Kelley from a home that Freddie
Mac bought at a sheriff's sale after defendants defaulted on their
mortgage. Defendants' mortgage was obtained from First National
Bank of America, which assigned it to ABN-AMRO Mortgage
Group, Inc. Before defendants defaulted, ABN-AMRO merged
with CitiMortgage, Inc. CitiMortgage (CMI) foreclosed on defen-
dants' property by advertisement under MCL 600.3201 *et seq.*, and
after defendants failed to redeem the property within the six-
month statutory redemption period, the property vested in Fred-
die Mac. Defendants challenged the foreclosure, arguing that
foreclosing on the property by advertisement violated their Fifth
Amendment due process rights and that CMI's foreclosure was
statutorily invalid under the recording act because there was no
chain of title evidencing the transfer of the mortgage from
ABN-AMRO to CMI. Therefore, according to defendants, CMI did
not own the debt and the foreclosure notice failed to properly
identify the foreclosing entity. The district court, Thomas P. Boyd,
J., granted Freddie Mac's motion for summary disposition, ruling
that Freddie Mac was not a governmental actor subject to Fifth
Amendment claims and that the chain of title was proper under
MCL 600.3204(3) because the merger between ABN-AMRO and
CMI did not constitute an assignment of the mortgage that
necessitated a recording. Defendants appealed. The circuit court,
Rosemarie E. Aquilina, J., reversed the district court on both
grounds and dismissed the complaint. Freddie Mac applied for
leave to appeal, and the Federal Housing Finance Agency (FHFA),
which had placed Freddie Mac into conservatorship, moved to
intervene. The Court of Appeals granted both applications and
initially affirmed in part, reversed in part, and remanded for
reinstatement of the district court's order. Plaintiff filed a motion
for reconsideration. The Court of Appeals granted reconsideration,
vacating its earlier opinion.

On reconsideration, the Court of Appeals *held*:

1. The circuit court erred by concluding that Freddie Mac was a governmental entity subject to Fifth Amendment claims. The fact that Freddie Mac filed tax exemptions as the United States under MCL 207.526(h)(i) and 505(h)(i) was not determinative given that, under 12 USC 1452(e), Freddie Mac would have been exempt from taxation regardless of whether it sought an exemption as the United States, and, in any event, no authority supported the position that seeking a tax exemption as the United States subjected federally created corporations to constitutional claims under the Fifth Amendment. Under *Lebron v Nat'l Railroad Passenger Corp*, 513 US 374 (1995), a corporation is part of the federal government for constitutional purposes if the Government created it by special law for the furtherance of governmental objectives and retained permanent authority to appoint a majority of the directors of that corporation. In this case, there was no dispute that the government created Freddie Mac by special statute for the purpose of furthering governmental objectives, but the FHFA's 2008 conservatorship did not transform Freddie Mac into a governmental entity because the conservatorship was temporary rather than permanent.

2. It was unnecessary to determine whether the circuit court erred by concluding that CMI was required to record the transfer of defendants' mortgage under MCL 600.3204(3) because defendants did not allege that they were prejudiced by CMI's failure to do so.

Reversed and remanded for further proceedings.

1. MORTGAGES — CONSTITUTIONAL LAW — FEDERAL HOME LOAN MORTGAGE ASSOCIATION — DUE PROCESS CLAIMS.

  The Federal Home Loan Mortgage Association, commonly known as "Freddie Mac," is not a governmental entity subject to Fifth Amendment claims.

2. MORTGAGES — FORECLOSURES BY ADVERTISEMENT — STATUTORY RECORDING REQUIREMENTS — FAILURE TO COMPLY — RELIEF — PREJUDICE.

  To obtain relief on the ground that a mortgagee failed to comply with the statutory recording requirement in MCL 600.3204(3), a mortgagor must establish that the failure to comply was prejudicial.

*Dykema Gossett PLLC* (by *Jill M. Wheaton* and *Christyn M. Scott*) for plaintiff.

Legal Services of South Central Michigan (by *Nicole Shannon, Kellie Maki*, and *Perry Thompson*) for defendants.

Amicus Curiae:

*Warner Norcross & Judd LLP* (by *Gaëtan Gerville-Réache* and *Rodney D. Martin*) for the Michigan Bankers Association.

### ON RECONSIDERATION

Before: BORRELLO, P.J., and SERVITTO and BECKERING, JJ.

PER CURIAM. In this foreclosure-related litigation, plaintiff, Federal Home Loan Mortgage Association[1] (Freddie Mac), appeals by leave granted an Ingham Circuit Court opinion and order reversing the 55th District Court's July 31, 2012 order terminating the possession by defendants Michael R. and Kathryn M. Kelley[2] of residential property located in East Lansing. For the reasons set forth in this opinion, we reverse and remand for reinstatement of the district court's order.

### I. BACKGROUND

#### A. UNDERLYING MORTGAGE TRANSACTION

This dispute involves real property located at 2458 Barnsbury Road, in East Lansing, Michigan. On

---

[1] In the lower court, plaintiff referred to itself as the Federal Home Loan Mortgage Corporation; however, on appeal, it refers to itself as the Federal Home Loan Mortgage Association. For purposes of this opinion, we will refer to plaintiff as "Freddie Mac."

[2] Although it appears from the mortgage and other documents that defendants' surname is "Kelly," this opinion retains the spelling from the caption of the order being appealed.

March 21, 2003, First National Bank of America loaned defendants $240,000 for the purchase of the property. Defendants executed a mortgage encumbering the property to First National. The mortgage was recorded on April 24, 2003. On March 26, 2003, First National assigned the mortgage to ABN-AMRO Mortgage Group, Inc. The assignment was recorded on November 25, 2003. On September 1, 2007, CitiMortgage, Inc. and ABN-AMRO merged and maintained the name CitiMortgage (hereinafter CMI).

B. FREDDIE MAC AND THE FEDERAL HOUSING FINANCE AGENCY CONSERVATORSHIP

Freddie Mac is a federally chartered corporation that was created as part of the Emergency Home Finance Act of 1970.[3] See 12 USC 1451 *et seq.*; *American Bankers Mtg Corp v Fed Home Loan Mtg Corp*, 75 F3d 1401, 1404 (CA 9, 1996). Freddie Mac operates in the secondary mortgage market, purchasing and securitizing residential mortgages. *Sonoma Co v Fed Housing Fin Agency*, 710 F3d 987, 989 (CA 9, 2013). Freddie Mac is governed by the Federal Housing Enterprises Financial Safety and Soundness Act, 12 USC 4501 *et seq. Sonoma Co*, 710 F3d at 989.

In 2008, Congress amended the Financial Safety and Soundness Act by enacting the Housing and Economic Recovery Act (HERA), 12 USC 4511 *et seq.* "HERA established the Federal Housing Finance Agency [FHFA], an independent agency charged with supervising [Fannie Mae and Freddie Mac] and the Federal Home Loan Banks." *Sonoma Co*, 710 F3d at 989. HERA empowered the FHFA to act, under certain circumstances, as a conservator or receiver of Freddie Mac or

---

[3] "Freddie Mac" was officially titled the "Federal Home Loan Mortgage Corporation." See 12 USC 1451, 1452.

the Federal National Mortgage Association (Fannie Mae) for purposes of "reorganizing, rehabilitating, or winding up the affairs" of either entity. 12 USC 4617(a)(2). It is undisputed that the FHFA placed Freddie Mac into conservatorship in September 2008.[4]

### C. FORECLOSURE OF THE PROPERTY

In June 2011, defendants defaulted on the mortgage and CMI foreclosed on the property under Michigan's foreclosure by advertisement statute, MCL 600.3201 *et seq*. Freddie Mac purchased the property at an October 20, 2011 sheriff's sale. Defendants failed to redeem the property within the six-month statutory redemption period, and the property vested in Freddie Mac on April 20, 2012. See MCL 600.3236.

On May 1, 2012, after expiration of the statutory redemption period, Freddie Mac initiated eviction proceedings in district court pursuant to MCL 600.5704. Defendants challenged the foreclosure, arguing in part that the foreclosure violated their Fifth Amendment due process rights. Defendants maintained that Freddie Mac was a federal actor by virtue of FHFA's conservatorship and was subject to the due process requirements of the Fifth Amendment, and therefore could not foreclose by advertisement.[5] Defendants also argued that CMI's foreclosure was invalid under MCL 600.3204(3) because there was no chain of title evidencing the transfer of the mortgage from ABN-AMRO to CMI. Therefore, according to defendants, CMI did not own

---

[4] The FHFA also simultaneously placed Fannie Mae into conservatorship. See *Herron v Fannie Mae*, 857 F Supp 2d 87 (D DC, 2012).

[5] Defendants' brief on appeal explains that at the time of the foreclosure, Freddie Mac was the investor of defendants' mortgage, and CMI was selected by Freddie Mac to service the mortgage.

the debt and the foreclosure notice failed to properly identify the foreclosing entity.

The district court granted Freddie Mac's motion for summary disposition under MCR 2.116(C)(9) (failure to state valid defense) and MCR 2.116(C)(10) (no genuine issue of material fact). The district court held in relevant part that Freddie Mac was not a governmental actor subject to Fifth Amendment claims and that the chain of title was proper under MCL 600.3204(3) because the merger between ABN-AMRO and CMI did not constitute an "assignment" of the mortgage that necessitated a recording.

Defendants appealed, and the circuit court reversed. The circuit court held that Freddie Mac was a governmental entity subject to the Fifth Amendment's notice and hearing requirements. The circuit court reasoned that Freddie Mac filed tax exemptions as the United States under MCL 207.526(h)($i$) and 505(h)($i$) and that the federal government retained permanent control over all aspects of Freddie Mac. Noting that "FHFA controls every aspect of [Freddie Mac's] business and its Board of Directors is appointed by and answers to the Director of the FHFA," the court concluded that "the procedures and provisions in place in this case make the conservatorship, in all practicality, permanent." Regarding the chain of title, the circuit court held that the foreclosure was invalid because MCL 600.3204(3) requires assignments to be made whenever the foreclosing party is not the original mortgagee, so that assignments must be recorded when a mortgagee merges into another company. The court stated, "ABN AMRO ceased to exist when it merged with [CMI]. Because of this, [CMI] is not synonymous with ABN AMRO, but is an entirely different entity that is required to be assigned the mortgage under MCL 600.3204(3)."

The circuit court reversed the district court's order awarding possession to Freddie Mac and dismissed the complaint. Freddie Mac applied for leave to appeal and the FHFA moved to intervene. This Court granted both applications.[6] On appeal, Freddie Mac argues that the circuit court erred by holding that it was a governmental entity for constitutional purposes, erred by concluding that the foreclosure failed to comply with MCL 600.3204(3), and, to the extent there was a defect in the chain of title, erred by concluding that the foreclosure was void *ab initio* as opposed to merely voidable.

## II. STANDARD OF REVIEW

"We review de novo a trial court's decision on a motion for summary disposition to determine whether the moving party is entitled to judgment as a matter of law." *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012). We review constitutional issues and issues of statutory construction under the same standard. *Great Lakes Society v Georgetown Charter Twp*, 281 Mich App 396, 425; 761 NW2d 371 (2008); *Cuddington*, 298 Mich App at 271.

## III. ANALYSIS

### A. DUE PROCESS

The Fifth Amendment "appl[ies] to and restrict[s] only the Federal Government and not private persons." *Pub Utilities Comm of DC v Pollak*, 343 US 451, 461; 72 S Ct 813; 96 L Ed 1068 (1952). Therefore, the threshold question in this case is whether Freddie Mac is a governmental entity subject to a Fifth Amendment claim.

---

[6] *Fed Home Loan Mtg Ass'n v Kelley*, unpublished order of the Court of Appeals, entered October 11, 2013 (Docket No. 315082).

The circuit court concluded that Freddie Mac is a governmental entity subject to Fifth Amendment claims for two reasons: (1) Freddie Mac "filed tax exemptions as the United States under MCL 207.526(h)(*i*) and 505(h)(*i*)"; and (2) Freddie Mac is a governmental entity under *Lebron v Nat'l R Passenger Corp*, 513 US 374, 377; 115 S Ct 961; 130 L Ed 2d 902 (1995). Both of these conclusions are erroneous.

With respect to Freddie Mac's tax status, while MCL 207.505(h)(*i*) and MCL 207.526(h)(*i*) provide tax exemptions for certain instruments and transactions involving the United States, Freddie Mac is specifically authorized by federal statute to be exempt from "all taxation now or hereafter imposed by any . . . State," except for real property taxes. 12 USC 1452(e). Thus, Freddie Mac would have been exempt regardless of whether it sought an exemption "as the United States." Moreover, the circuit court did not cite, and defendants do not provide, any authority supporting the position that seeking a tax exemption "as the United States" subjects federally created corporations to constitutional claims under the Fifth Amendment. As the United States Court of Appeals for the Ninth Circuit stated in *Hall v American Nat'l Red Cross*, 86 F3d 919, 922 (CA 9, 1996), "Government-created corporations are often held to be tax-immune government instrumentalities, but courts have also frequently found them not to be subject to constitutional treatment as government actors."[7] Thus, the mere fact that Freddie Mac filed for tax exemptions as "the United States" was not dispositive of whether Freddie Mac is a governmental entity

---

[7] "Though not binding on this Court, federal precedent is generally considered highly persuasive when it addresses analogous issues." *Wilcoxon v Minn Mining & Mfg Co*, 235 Mich App 347, 360 n 5; 597 NW2d 250 (1999).

for constitutional purposes. Instead, *Lebron*, 513 US 374, is controlling on this issue, and under the *Lebron* framework, we conclude that Freddie Mac is not a governmental entity.

In *Lebron*, the United States Supreme Court addressed whether the National Railroad Passenger Corporation (commonly known as Amtrak) was a governmental entity for constitutional purposes. In that case, Amtrak refused to display the plaintiff's political advertisement on a large billboard at Penn Station commonly known as "the Spectacular." The plaintiff sued, alleging violations of his First and Fifth Amendment rights. *Id*. at 377-378. At issue was whether Amtrak was a governmental entity subject to the plaintiff's constitutional claims. *Id*. at 378-379.

In resolving this issue, the Supreme Court held that, "where . . . the Government creates a corporation by special law, for the furtherance of governmental objectives, and retains for itself permanent authority to appoint a majority of the directors of that corporation, the corporation is part of the Government" for constitutional purposes. *Id*. at 400. Although Amtrak's authorizing statute expressly stated that Amtrak was not a federal entity, the *Lebron* Court concluded otherwise. The Court reasoned that Amtrak was created by special statute explicitly for the furtherance of a governmental goal—specifically, the preservation of passenger trains in the United States. *Id*. at 383, 397-398. Furthermore, six of the eight Amtrak board members were directly appointed by the President of the United States. *Id*. at 397. Moreover, the Court reasoned, the government's control of Amtrak was permanent in nature, explaining:

> Amtrak is not merely in the temporary control of the Government (as a private corporation whose stock comes into federal ownership might be); it is established and

organized under federal law for the very purpose of pursuing federal governmental objectives, under the direction and control of federal governmental appointees. It is in that respect no different from the so-called independent regulatory agencies such as the Federal Communications Commission or the Securities Exchange Commission, which are run by Presidential appointees with fixed terms. [*Id.*]

In concluding that Amtrak was a federal entity, the *Lebron* Court distinguished *Regional Rail Reorganization Act Cases*, 419 US 102; 95 S Ct 335; 42 L Ed 2d 320 (1974), wherein the Supreme Court held that Conrail was not a federal instrumentality "despite the President's power to appoint . . . 8 of [Conrail's] 15 directors." *Lebron*, 513 US at 399. The *Lebron* Court noted that, in *Regional Rail*, the federal appointees were appointed to the Conrail board to protect federally backed debt obligations. *Id.* Furthermore, the appointees were required to operate Conrail "at a profit for the benefit of its shareholders," and full control of the board would shift back to the shareholders once federally backed debt obligations fell below 50 percent of total indebtedness. *Id.* (quotation marks and citations omitted). In contrast, "[t]he Government exerts its control [over Amtrak] not as a creditor but as a policymaker, and no provision exists that will automatically terminate control upon termination of a temporary financial interest." *Id.*

In this case, there is no dispute that the government created Freddie Mac by special statute for the purpose of furthering governmental objectives.[8] Defendants do

---

[8] See, e.g., 12 USC 4501; *American Bankers Mtg Corp v Fed Home Loan Mtg Corp*, 75 F3d 1401, 1406-1407 (CA 9, 1996) ("The congressional purposes for Freddie Mac are clearly designed to serve the public interest by increasing the availability of mortgages on housing for low- and moderate-income families and by promoting nationwide access to mortgages.").

not argue, nor can they prove that, preconservatorship, Freddie Mac was a governmental entity. See *American Bankers Mtg Corp v Fed Home Loan Mtg Corp*, 75 F3d 1401, 1406-1409 (CA 9, 1996) (holding that preconservatorship Freddie Mac lacked sufficient government control under *Lebron* because 13 of its 18 directors were elected annually by common shareholders and its 60 million shares of common stock were publicly traded on the New York Stock Exchange).

Instead, defendants argue that the FHFA's 2008 conservatorship served to transform Freddie Mac into a governmental entity. This argument is not novel and has been repeatedly rejected by federal courts including the United States Court of Appeals for the Sixth Circuit, which recently held that "[u]nder the *Lebron* framework, Freddie Mac is not a government actor who can be held liable for violations of the Fifth Amendment's Due Process Clause." *Mik v Fed Home Loan Mtg Corp*, 743 F3d 149, 168 (CA 6, 2014). This holding aligned with numerous decisions by federal courts across the country, which have soundly rejected the same argument.[9] For the following reasons, we now

---

[9] See, e.g., *Narra v Fannie Mae*, opinion of the United States District Court for the Eastern District of Michigan, issued February 7, 2014 (Docket No. 2:13-cv-12282); *Fed Home Loan Mtg Corp v Shamoon*, 922 F Supp 2d 641 (ED Mich, 2013); *Lopez v Bank of America, N.A.*, 920 F Supp 2d 798 (WD Mich, 2013); *Dias v Fed Nat'l Mtg Ass'n*, 990 F Supp 2d 1042 (D Hawaii, 2013); *Matveychuk v One West Bank*, opinion of the United States District Court for the Northern District of Georgia, issued December 19, 2013 (Docket No. 1:13-CV-3464-AT); *May v Wells Fargo Bank*, opinion of the United States District Court for the Southern District of Texas, issued August 29, 2013 (Docket No. 4:11-3516); *Bernard v Fed Nat'l Mtg Ass'n*, opinion of the United States District Court for the Eastern District of Michigan, issued March 27, 2013 (Docket No. 12-14680); *In re Kapla*, 485 BR 136 (Bankr ED Mich, 2012); *Syriani v Freddie Mac Multiclass Certificates*, opinion of the United States District Court for the Central District of California, issued July 10, 2012 (Docket No. CV 12-3035-JFW); *Herron v Fannie Mae*, 857 F Supp 2d 87, 95-96 (D DC, 2012).

similarly hold that Freddie Mac, under the conservatorship of the FHFA, is not a governmental entity for constitutional purposes.

As conservator, the FHFA succeeded to "all" of Freddie Mac's "rights, titles, powers, and privileges," with authority to operate all of its business "with all the powers of the shareholders, the directors, and the officers . . . ." 12 USC 4617(b)(2)(A), (B)(i). Although these powers are sweeping, importantly, Congress did not appoint FHFA as *permanent* conservator over Freddie Mac. Instead, the purpose of the conservatorship is to reorganize, rehabilitate, or wind up Freddie Mac's affairs. 12 USC 4617(a)(2). These terms connote a temporary period of control, and defendants identify no statutory language showing that the government intended to effectuate a permanent takeover of Freddie Mac.

The circuit court concluded that although "conservatorship is described as a temporary status of a company, the procedures in place in this case make the conservatorship, in all practicality, permanent," noting that "there is no determined end date in which [Freddie Mac] will become a private entity, nor is there an automatic provision that will revert [Freddie Mac] to a private entity." Similarly, defendants point out that in *Regional Rail*, 419 US at 102, the Court held that Conrail was not a federal instrumentality in part because the government's full voting control would *automatically* shift back to Conrail's shareholders once the corporation's federal debt obligations fell below 50 percent of its indebtedness. *Lebron*, 513 US at 399, citing *Regional Rail*, 419 US at 152. Defendants argue that, unlike Conrail, in this case there is no triggering mechanism that terminates the conservatorship. These arguments are unpersuasive.

The *Lebron* Court noted that with respect to Conrail the government was merely acting as its creditor and exerted control over Conrail for the purpose of ensuring a profit for Conrail's shareholders. *Lebron*, 513 US at 399. Notably, the *Lebron* Court did not state that government control would be deemed permanent unless the government's involvement was scheduled to terminate on a specified date or upon the satisfaction of a specified condition. To the contrary, the *Lebron* Court recognized that the indefinite government control over Conrail, pending the satisfaction of certain conditions, did not equate to permanent government control. *Id.* With respect to permanence, the conservatorship of Freddie Mac is analogous to the government's control of Conrail, as it is similarly of indefinite duration pending the satisfaction of certain conditions. See 12 USC 4617(a)(2). Thus, Congress's failure to specify a termination date does not render the FHFA's control permanent under the *Lebron* framework. This is especially true considering that the government's control of Freddie Mac was imposed for the inherently temporary purpose of "reorganizing, rehabilitating, or winding up" its affairs. 12 USC 4617(a)(2).

In sum, Freddie Mac was created by special law for governmental purposes; however, although the federal government, through the FHFA, exercises control over Freddie Mac, that control is not permanent in nature. Accordingly, under the *Lebron* framework, Freddie Mac is not a federal entity for constitutional purposes, and defendants' due process claim fails as a matter of law.[10] See *Nat'l Airport Corp v Wayne Bank*, 73 Mich App 572,

---

[10] Because we conclude that Freddie Mac is not a governmental entity for constitutional purposes, we need not address Freddie Mac's argument that Michigan's foreclosure by advertisement does not violate the Due Process Clause.

574; 252 NW2d 519 (1977) ("It is unquestioned that state action is required in order to assert a denial of due process under both the Michigan and United States Constitutions.").

### B. VALIDITY OF FORECLOSURE UNDER MCL 600.3204(3)

Freddie Mac argues that the circuit court erred in holding that the foreclosure was void *ab initio* because the foreclosure did not comply with MCL 600.3204(3).

MCL 600.3204(3) provides as follows:

> *If the party foreclosing a mortgage* by advertisement *is not the original mortgagee, a record chain of title shall exist* prior to the date of sale under [MCL 600.3216] *evidencing the assignment of the mortgage* to the party foreclosing the mortgage. [Emphasis added.][11]

In this case, it is undisputed that the foreclosing party was not the original mortgagee. First National assigned the mortgage to ABN-AMRO, and that assignment was duly recorded. Subsequently, ABN-AMRO merged with CMI, the foreclosing entity. Freddie Mac argues that CMI was not required to record its interest in defendants' mortgage under MCL 600.3204(3) because it acquired that interest pursuant to a merger. Defendants argue that the circuit court correctly concluded that CMI failed to comply with MCL 600.3204(3). We need not address the substance of this issue, however, because our Supreme Court in *Kim v JPMorgan Chase Bank, NA*, 493 Mich 98, 115-116; 825 NW2d 329 (2012), held that parties seeking to set aside a foreclosure sale on this basis must show that they were prejudiced by the mortgagee's failure to comply

---

[11] This language reflects the version of MCL 600.3204(3) in effect when this action was filed. The minor amendment of this provision that became effective on June 19, 2014, does not affect our analysis. See 2014 PA 125.

with MCL 600.3204 by demonstrating that "they would have been in a better position to preserve their interest in the property absent [the mortgagee's] noncompliance with the statute." In this case, the only prejudice defendants allege is that plaintiff violated their due process rights. In light of our holding that defendants' due process rights were not violated, defendants have failed to allege the prejudice necessary for this Court to reach the merits of this issue.

IV. CONCLUSION

In summary, we conclude that Freddie Mac is not a governmental entity for constitutional purposes and defendants' due process claim therefore failed as a matter of law. Further, whether CMI properly complied with MCL 600.3204(3) is not before us given defendants' failure to allege prejudice. Therefore, defendants were not entitled to any relief, and the district court properly entered an order terminating defendants' possession of the property. Accordingly, we reverse the circuit court's order and remand for reinstatement of the district court's order terminating defendants' possession of the property.

Reversed and remanded for proceedings consistent with this opinion. No costs are awarded in this matter. MCR 7.219 (A). We do not retain jurisdiction.

BORRELLO, P.J., and SERVITTO and BECKERING, JJ., concurred.